UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| AMY OGLE, | ) | |
|---|---|---|
| *Plaintiff*, | ) | |
| | ) | Case No. 3:20-cv-293 |
| v. | ) | |
| | ) | Judge Atchley |
| WILLIAM T. JONES, individually and in his official capacity, and ANDERSON COUNTY, TENNESSEE, | ) | Magistrate Judge McCook |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Amy Ogle asserts claims against Defendants William T. Jones and Anderson County, Tennessee, under 42 U.S.C. § 1983 and the Tennessee Human Rights Act ("THRA"), TENN. CODE ANN. §§ 4-21-101–1004. [Doc. 1]. Defendant Anderson County's Motion for Partial Summary Judgment [Doc. 72] is now ripe for the Court's review. For the reasons explained below, Defendant Anderson County's motion will be **GRANTED IN PART** and **DENIED IN PART**.

### I. FACTUAL BACKGROUND

This case stems from allegations of sexual harassment. Plaintiff Amy Ogle worked as a Deputy Clerk in the Anderson County Circuit Court Clerk's Office. [Doc. 87-2 at 25]. Ogle alleges that during her employment, Circuit Court Clerk William T. Jones sexually harassed her. Her allegations are as numerous as they are troubling. Ogle claims that Jones inappropriately touched and rubbed her and referred to her as "prissy bitch." [*Id.* at 48–49, 100]. Jones also allegedly incentivized Ogle to comply with his sexual demands. For example, he allegedly demanded that she send photos of her breasts so she could remain on vacation and informed her that she would not receive another pay raise until she "got out of her shyness." [*Id.* at 59, 66].

For reasons unrelated to the alleged sexual harassment, Ogle went on medical leave from November of 2017 to May of 2018. [Doc. 91-2 at 84–85]. Near the end of the leave period, Jones staged a meeting with Ogle at an Arby's, where Ogle alleges Jones asked her to sign a statement denying all sexual harassment allegations. [Doc. 87-2 at 113–14]. Ogle agreed to sign a statement but quickly reversed course and decided not to after she left the meeting. [*Id.* at 114]. The meeting prompted Ogle to contact HR Director Kim Whitaker, who arranged for Ogle to transfer to the sheriff's office after her leave expired. [*Id.* at 115–16, 119]. Ogle worked in the sheriff's office for a short period before returning to the clerk's office on June 28, 2018. [Doc. 91-2 at 97].

Shortly before returning to the clerk's office, however, Ogle filed suit against Jones and Anderson County for the sexual harassment. *Ogle v. Jones & Anderson Cnty., Tenn.*, No. 3:18-cv-220, Doc. 1 (E.D. Tenn. June 3, 2018). The parties later stipulated to the dismissal of that case without prejudice on July 1, 2019. *Id.* at Doc. 20. Ogle filed this suit one year later and included identical allegations in her Complaint. Anderson County filed a Motion for Partial Summary Judgment and seeks dismissal of the final four counts in Ogle's Complaint. [Doc. 73 at 2]. Unable to resolve the motion on the then-existing record, the Court ordered the parties to file supplemental briefing. [Doc. 101]. Anderson County filed a supplemental brief, and Ogle filed an untimely response. [Docs. 109, 119].[1]

## II. STANDARD OF REVIEW

"Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Sommer v. Davis*, 317 F.3d 686, 690 (6th Cir.

---

[1] The Court devised a supplemental briefing schedule in its May 16, 2024, Order. [Doc. 101]. The briefing schedule required Anderson County to file its supplemental brief within seven days, and Ogle was ordered to file a response within seven days thereafter. [*Id.* at 2]. Anderson County filed its brief on May 23, 2024, but Ogle did not file her response until June 4, 2024. [Docs. 109, 119]. Thus, Ogle's response is untimely, and Ogle did not seek leave of Court to file her late response. The Court will not consider Ogle's untimely response. *Hughes v. Tenn. Dep't of Corr.*, No. 3:19-cv-924, 2022 WL 601811, at *2 n.4 (M.D. Tenn. Jan. 28, 2022).

2003) (citing Fed. R. Civ. P. 56(c)). When ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III. ANALYSIS

Anderson County moves for summary judgment on Counts Four, Five, Six, and Seven of Ogle's Complaint. [Doc. 73 at 1].[2] In her response, Ogle indicates that she does not intend to pursue Counts Six or Seven at trial and consents to their dismissal. [Doc. 87 at 1]. Based on Ogle's consent, Counts Six and Seven are dismissed with prejudice. Remaining for the Court's review, then, is Anderson County's request for summary judgment as to Counts Four and Five.[3]

### A. Sufficiency of Ogle's Complaint

The parties disagree as to what Counts Four and Five allege. Anderson County contends that they allege retaliation whereas Ogle says they allege quid pro quo sexual harassment. Both Counts Four and Five incorporate the Complaint's earlier allegations and are titled "Failure to Hire/Restore/Constructive Discharge." [Doc. 1 at ¶ 53, 59]. Moreover, each Count specifically alleges that Jones conditioned Ogle's job restoration at the clerk's office on her signing a statement denying Jones's alleged sexual harassment. [*Id.* at ¶ 55, 60]. The Court must first determine the nature of Ogle's claims before deciding whether they survive summary judgment.

---

[2] Ogle's Complaint lists two counts as "Count V." [Doc. 1 at 11–12]. For purposes of clarity, the Court will refer to the first "Count V" as Count Five and the second "Count V" as Count Six.

[3] Defendant Jones filed a Motion to Join Co-Defendant Anderson County's Motion for Summary Judgment. [Doc. 77]. In support, Jones asserts that the County's arguments in support of its motion are equally applicable to him. [*Id.*]. No party filed any opposition to Jones's motion. Consequently, Jones's motion is granted.

In asserting that Ogle's Complaint fails to allege quid pro quo sexual harassment, Anderson County is challenging the sufficiency of a pleading. "The issue in a challenge to the sufficiency of a pleading is notice." *Carter v. Ford Motor Co.*, 561 F.3d 562, 565 (6th Cir. 2009). When a complaint's language is ambiguous as to what claims are alleged, the Sixth Circuit deploys "a 'course of the proceedings test' to determine whether defendants have received notice of the plaintiff's claims." *Id.* at 566 (citing *Harris v. Bornhorst*, 513 F.3d 503, 516 (6th Cir. 2008)). Thus, the "course of the proceedings test" requires the Court to first determine whether Ogle's Complaint is ambiguous as to whether it alleges claims for quid pro quo sexual harassment, and if so, then decide whether subsequent developments in the litigation placed Anderson County on notice of the claims. *See id.*

First, the Court will assess whether Ogle's Complaint is ambiguous. The Sixth Circuit's decision in *Carter* provides ample guidance on this issue. In *Carter*, the plaintiff's complaint included a count titled "Violations of the Family Medical Leave Act." *Id.* The plaintiff contended that the count pertained to her 2005 termination, even though her complaint did not explicitly mention the 2005 termination or "tie its allegations to any particular date or event." *Id.* at 565–66. Notwithstanding these deficiencies, the Sixth Circuit looked to the complaint's background facts section, which alleged that the plaintiff began her employment in 2001. *Id.* at 566. This allegation, according to the Sixth Circuit, "might reasonably be interpreted to provide notice that the lawsuit includes events that occurred throughout [the plaintiff's] employment[,]" including her 2005 termination. *Id.*

Like the plaintiff's complaint in *Carter*, Ogle's Complaint is ambiguous as to which claims it alleges. A similar sequence precipitates every quid pro quo sexual harassment claim: the employer engages in sexually discriminatory behavior, which "compels an employee to elect

4

between acceding to sexual demands and forfeiting job benefits, continued employment or promotion, or otherwise suffering tangible job detriments." *Highlander v. K.F.C. Nat'l Mgmt. Co.*, 805 F.2d 644, 648 (6th Cir. 1986). On one hand, the Complaint does not invoke "quid pro quo" by name, and Counts Four and Five are curiously titled "Failure to Hire/Restore/Constructive Discharge." [Doc. 1 at 10–11]. On the other hand, the Complaint alleges that Defendant Jones implied "Plaintiff would get a raise in pay if she were to comply with his sexual advances." [*Id.* at ¶ 12(h)]. The Complaint also alleges that Ogle's "[s]ubmission to Jones's behavior became a condition of her employment, something she had to endure to remain employed." [*Id.* at ¶ 28]. These allegations align with a quid pro quo theory of liability, and given their specificity, they arguably provide more notice than the *Carter* plaintiff's comparatively general allegation regarding when she began her employment.

Because Ogle's Complaint is ambiguous as to whether it alleges quid pro quo sexual harassment, the Court must consider whether the "course of the proceedings" placed Anderson County on notice of these claims. Courts often examine deposition transcripts to determine whether the defendant received notice of the plaintiff's claims. *See Harris*, 513 F.3d at 517–18. The Sixth Circuit conducted this analysis in *Carter* and *Cummings*, with each case reaching a different result. In *Carter*, the plaintiff, despite claiming that the complaint pertained to her 2005 termination, testified in her deposition that her lawsuit only concerned a separate termination in 2006. *Carter*, 561 F.3d at 565, 568. Because the plaintiff "expressly disavowed" any claim pertaining to the 2005 termination in her deposition, the Sixth Circuit concluded that the defendant lacked notice of the claim, and the plaintiff could not raise it in her response to the motion for summary judgment. *Id.* at 569.

5

The Sixth Circuit reached the opposite conclusion in *Cummings v. City of Akron*, 418 F.3d 676 (6th Cir. 2005). There, the plaintiff's complaint alleged that the defendants, by seizing and beating him, violated his Fourteenth Amendment rights. *Id.* at 681. Though the complaint did not mention the Fourth Amendment at all, the Sixth Circuit determined that statements of counsel made during the plaintiff's deposition revealed that "both sides understood [the plaintiff's] suit to encompass Fourth Amendment claims for 'unlawful entry' and 'excessive use of force.'" *Id.* The defendants even moved for summary judgment on the unlawful entry claim, which underscored their notice of the claim. *Id.* For these reasons, the defendants acquired notice of the plaintiff's Fourth Amendment claims during the "course of the proceedings." *Id.*

This case lies somewhere in between *Carter* and *Cummings*. Ogle did not disavow any claims as the *Carter* plaintiff did in her deposition. To the contrary, Ogle's deposition testimony echoes the quid pro quo sexual harassment theories her Complaint ambiguously alleges. Ogle testified that Jones conditioned future raises on her "getting out of her shyness," which Ogle interpreted as a request to comply with sexual advances. [Doc. 87-2 at 104–05]. Ogle also recounted when Jones told her that if she did not send a picture of her breasts, she would have to return to work early from vacation. [*Id.* at 66]. Unlike the plaintiff in *Carter* who expressly disavowed the 2005 termination claim she later asserted in her response brief, Ogle's deposition testimony frequently advances claims aligning with a quid pro quo theory of liability.

The nature of Ogle's deposition testimony renders her case more analogous to *Cummings*. Just as the plaintiff's complaint in *Cummings* made no reference to the Fourth Amendment, Ogle's Complaint does not mention "quid pro quo." But statements made during Ogle's deposition, as was the case in *Cummings*, demonstrate the parties' notice of potential quid pro quo sexual harassment claims. In addition to Ogle's testimony as discussed above, questioning from Anderson

6

County's counsel during the deposition establishes the County's notice. Counsel for Anderson County specifically posed the following question to Ogle: "[D]id [Jones] ever condition a promotion or increase in pay or . . . benefits or anything?" [Doc. 87-2 at 59]. Ogle responded affirmatively and again mentioned Jones conditioning future raises on her "getting out of her shyness." [*Id.*]. Defendant Jones's attorney pursued a similar line of questioning during Ogle's deposition. Reading allegations directly from her Complaint, counsel for Jones asked Ogle about her contention that Jones impliedly conditioned pay raises on compliance with his sexual demands. [*Id.* at 103]. Ogle reiterated her allegation that Jones conditioned future raises on her "getting out of her shyness." [*Id.* at 104].

It is true that Anderson County did not move for summary judgment on any quid pro quo sexual harassment claims as did the defendants in *Cummings* on the plaintiff's Fourth Amendment claims. This distinction does render the evidence of notice in *Cummings* comparatively stronger; moving for summary judgment on a claim all but confirms notice of the claim's existence. Still, like in *Cummings*, Ogle's deposition testimony and the questions she received from Defendants' counsel evinces the parties' understanding that the suit encompasses quid pro quo sexual harassment claims. *See also Harris*, 513 F.3d at 516–18 (holding that even though the complaint failed to specifically allege a *Brady* violation, the defendants had notice of the claim because the plaintiff's counsel asked repeated questions during a defendant's deposition regarding withheld exculpatory evidence).

After conducting a "course of the proceedings" analysis, the Court concludes that Ogle's Complaint is ambiguous as to whether it alleges quid pro quo sexual harassment claims, and subsequent developments in the litigation placed Anderson County on notice of the claims. Given this conclusion, the Court will turn to the merits of Ogle's claims.

### B. Ogle's Quid Pro Quo Theories

Ogle points to three separate instances to support liability for quid pro quo sexual harassment. These instances include Jones allegedly (1) asking Ogle to sign a statement denying she was sexually harassed; (2) conditioning Ogle's pay raises on her provision of sexual favors; and (3) demanding Ogle send a photo of her breasts. [Doc. 87 at 3]. The Court will assess each theory below.

#### 1. Request to Sign Statement

Ogle's first quid pro quo theory concerns a statement Jones asked her to sign. Shortly before her FMLA leave was set to expire, Ogle alleges Jones asked to meet with her at a local Arby's. [Doc. 87-2 at 113]. Ogle agreed to meet, and Jones asked her to sign a statement denying that he sexually harassed her. [*Id.* at 114]. Ogle initially agreed to sign a statement but changed her mind immediately after the meeting. [*Id.*]. She contacted HR Director Kim Whitaker to discuss the situation, and Whitaker arranged for Ogle to begin working in the sheriff's office upon expiration of her FMLA leave. [*Id.* at 115–16, 119].

Any successful quid pro quo sexual harassment claim requires five showings. A plaintiff must prove that she (1) was part of a protected class; (2) was "subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors"; (3) was harassed based on her sex; (4) was expressly or impliedly required to submit to the unwelcomed advances to receive job benefits or to avoid a tangible job detriment; and (5) was employed by an employer to which vicarious liability may be imputed. *Highlander*, 805 F.2d at 648 (citations omitted). The concept of quid pro quo sexual harassment is relatively straightforward: it occurs "when an employee's submission to unwanted sexual advances becomes either a condition for the receipt of job benefits, or the means to avoid an adverse employment action." *Howington v. Quality Rest.*

8

*Concepts, LLC*, 298 F. App'x 436, 440 (6th Cir. 2008) (citing *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461 (6th Cir. 2000)).

Ogle's quid pro quo sexual harassment claim, premised on the request to sign a statement, fails for two reasons. First, Jones asking Ogle to sign a statement does not qualify as an unwelcomed sexual advance or request for sexual favors. The request to sign a statement may have required Ogle to deny past instances of unwelcomed sexual advances, but the request itself does not involve any unwelcomed sexual conduct. In asking Ogle to sign a statement, Jones did not initiate any unwelcomed physical contact or demand sexual favors. Of course, the record is replete with instances of alleged inappropriate sexual conduct, including Ogle's claims that Jones touched and rubbed her without her permission. [Doc. 87-2 at 48–49]. But this particular quid pro quo claim is based on Jones asking Ogle to sign a statement, and that act does not fit the definition of an unwelcomed sexual advance or request for a sexual favor. Accordingly, because Jones's request to sign a statement did not involve any unwelcomed sexual advance or request for a sexual favor, Ogle's quid pro quo claim premised on the request to sign a statement fails to satisfy the second element.

Ogle's failure to prove the second element is sufficient to defeat her claim. Nevertheless, Ogle's claim fails for another reason: she cannot satisfy the fourth element, which requires her to show that her refusal to assent to Jones's sexual demands resulted in a tangible job detriment. *Highlander*, 805 F.2d at 648. This element requires a showing of causation; there must be a causal relationship between the alleged harasser's conduct and the tangible job detriment suffered. *Sanford v. Main St. Baptist Church Manor, Inc.*, 327 F. App'x 587, 597 (6th Cir. 2009) (citing *Howington*, 298 F. App'x at 442–43. Thus, Ogle must demonstrate a causal connection between

Jones's request for her to sign a statement and the alleged tangible job detriment: being placed at the sheriff's office instead of the clerk's office upon her return from FMLA leave.[4]

For there to be a causal relationship between the plaintiff's rejection of sexual advances and a subsequent tangible job detriment, the alleged harasser necessarily must possess some degree of involvement in creating the tangible job detriment. *See id* at 598. In other words, Jones, as the alleged harasser, must have been involved in the decision to place Ogle at the sheriff's office. *Sanford* illustrates this concept well. In that case, the plaintiff, an apartment complex's maintenance worker, alleged a supervisor sexually harassed him. *Id.* at 590–91. The apartment complex's board decided to eliminate some of the plaintiff's job duties, which reduced his compensation considerably. *Id.* at 598. The plaintiff alleged a causal connection between his rejection of the supervisor's sexual advances and the board's decision. *Id.* The Sixth Circuit rejected the plaintiff's causation argument because the supervisor had been terminated one month earlier and was not involved in the board's decision. *Id.* Because the supervisor played no role in the board's decision, the plaintiff failed to demonstrate that his loss of job duties occurred because of his negative response to the supervisor's alleged harassment. *Id.*

Just as the plaintiff in *Sanford* could not demonstrate causation, neither can Ogle. Ogle cannot demonstrate causation because no evidence in the record suggests Jones participated in the decision to place Ogle in the sheriff's office upon her return to work. To the contrary, Ogle testified that she did not want to return to the clerk's office, and it was HR Director Whitaker, not Jones, who made the decision to relocate Ogle to the sheriff's office. [Doc. 87-2 at 116, 119]. This account renders Ogle's case analogous to *Sconce v. Tandy Corp.*, 9 F. Supp. 2d 773 (W.D. Ky. 1998), where the plaintiff alleged that her supervisor's sexual advances prompted her to request a job

---
[4] For purposes of this discussion, the Court is assuming that Jones's request qualifies as an unwelcomed sexual advance. To be clear, however, the request does not constitute an unwelcomed sexual advance.

10

transfer to a different location. *Id.* at 776. Because the supervisor did not initiate the transfer, and because the plaintiff requested the transfer herself, causation was not established, and the quid pro quo claim failed. *Id.*

Similar to the plaintiff in *Sconce* who requested a transfer without involvement of her alleged harasser, Whitaker—but not Jones—decided to place Ogle in the sheriff's office. With Jones not involved in the decision, there cannot be a causal connection between Jones's request for Ogle to sign a statement and her transfer to the sheriff's office. Ogle's deposition testimony confirms the lack of causation. Ogle testified that she went to the sheriff's office because she did not want to return to the clerk's office, not because Jones forced her to relocate after she refused to sign a statement denying the sexual harassment allegations. [Doc. 87-2 at 113, 116]. Better yet, Ogle explained that she never asked Jones to return to the clerk's office as part of their meeting at Arby's. [*Id.* at 118]. And she refuted the notion that Jones conditioned her return to the clerk's office on her signing a statement. [*Id.* at 117–19]. Based on Ogle's own version of events, no causal connection exists, for purposes of a quid pro quo sexual harassment claim, between Jones asking Ogle to sign a statement and her relocation to the sheriff's office. This deficiency is fatal to Ogle's quid pro quo claim as to what took place during the meeting at Arby's.

### 2. Pay Raises

Though Jones's request for Ogle to sign a statement does not support a quid pro quo claim, the result is different as to Ogle's allegations regarding pay raises. According to Ogle, Jones indicated that she would receive pay raises upon complying with his sexual advances. Anderson County does not address this particular theory in its reply brief. For the reasons explained below, Ogle's quid pro quo claim, premised on the denial of pay raises, survives summary judgment and will be left to a jury for resolution.

11

A reasonable jury could find that Ogle has satisfied each of the five elements necessary to support her claim for quid pro quo sexual harassment. Ogle, as a woman, is part of a protected class and satisfies the first element. *Howington*, 298 F. App'x at 441. Regarding the second element, the record provides ample support for Ogle's claims of unwelcomed sexual harassment. According to Ogle, Jones told her that he would get her "out of her shyness," which to Ogle meant that Jones would ensure she complied with his sexual advances. [Doc. 87-2 at 58–59, 104–05]. Ogle also recounted Jones rubbing her legs and requesting that she send photos of her breasts. [*Id.* at 48–49, 66]. These allegations, if believed, provide sufficient evidence of unwelcomed sexual harassment.

The third element, which requires Ogle to show she was harassed based on her sex, finds sufficient support in the record for Ogle to survive summary judgment. The Sixth Circuit has held, in the context of a hostile work environment claim, that use of "gender-specific epithets" could suggest the alleged harassment was based on sex. *Williams*, 187 F.3d at 565–66. Ogle testified that Jones referred to her as "prissy bitch" and requested that she send photos of her breasts. [Doc. 87-2 at 66, 97, 100]. These gender-specific epithets and requests provide enough evidence for a jury to find that Ogle was harassed based on her sex.

A jury could find in Ogle's favor on the fourth element and conclude that she suffered a tangible job detriment following her refusal to comply with Jones's sexual advances. The Sixth Circuit has "recognized that a 'loss of pay or benefits' can constitute a tangible job detriment." *Howington*, 298 F. App'x at 442 (quoting *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 454–55 (6th Cir. 2008)). *Howington* proves instructive on this point. There, the plaintiff worked at a restaurant and alleged a supervisor repeatedly propositioned her for sex. *Id.* at 437–38. The supervisor sent the plaintiff home early twice allegedly as a form of punishment. *Id.* at 438–39,

442. The plaintiff earned wages from tips as a bartender, which meant that she "lost compensation in the form of unearned tips" during the periods she was sent home. *Id.* at 442. This loss in compensation, according to the Sixth Circuit, could support a jury finding of a tangible job detriment. *Id.*

In her deposition and at the trial of one of Jones's other alleged victims, Ogle testified that Jones informed her that she would not receive another pay raise until she "got out of her shyness." [Doc. 87-1 at 10; Doc. 87-2 at 59, 104]. Ogle did not receive another raise after Jones made those remarks. [Doc. 87-1 at 10]. Similar to the unearned tips in *Howington* causing the plaintiff to lose compensation, the lack of a pay raise resulted in Ogle losing out on additional compensation she would have otherwise received upon "getting out of her shyness." Of course, tips are more regularly part of a bartender's compensation than raises are for an employee like Ogle, but raises were by no means unheard of for Ogle. In fact, Jones awarded raises to her on three separate occasions. [Doc. 87-2 at 59]. The crucial point is this: the unearned tips and denial of a raise both achieve similar results and deprive the employee of additional compensation she would have received upon complying with the supervisor's sexual demands. A jury could conclude, on these facts, that Ogle suffered a tangible job detriment based on Jones's refusal to offer her a raise until she "got out of her shyness."[5]

The final element of Ogle's quid pro quo claim requires her to demonstrate the existence of respondeat superior liability. *Howington*, 298 F. App'x at 441. "Under the theory of respondeat superior, employers are held strictly liable for conduct of supervisory personnel who have plenary

---

[5] The tangible job detriment element, as the Court already discussed, includes a causation component. Ogle must show that the detriment resulted because of her refusal to accede to Jones's sexual demands. *Howington*, 298 F. App'x at 442. The very nature of Jones's alleged statement—that Ogle would not receive another raise until she "got out of her shyness"—provides sufficient evidence of causation. *Id.* (finding sufficient evidence of causation where supervisor allegedly told the plaintiff she would lose her job if she refused to have sex with him). In addition, Jones's control over Ogle's pay raises offers more evidence of a causal relationship. [Doc. 87-2 at 59].

authority to hire, fire, promote, and discipline employees." *Id.* (quoting *Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 186 (6th Cir. 1992)). This element does not appear to be in dispute. After all, the Sixth Circuit already deemed Jones a supervisor who had authority to hire and fire employees at the clerk's office. *Harness v. Anderson Cnty., Tenn.*, No. 21-5710, 2023 WL 4482371, at *6 (6th Cir. July 12, 2023). Anderson County did not argue to the contrary in *Harness*, and here, it again acknowledges that Jones had supervisory authority over clerk's office employees. [Doc. 84 at 3]. Considering *Harness* and the record in this case, Jones qualifies as a supervisor, which means Ogle can satisfy the fifth and final element of her claim. Ogle's quid pro quo sexual harassment claim pertaining to pay raises survives summary judgment.

### 3. Request to Send Explicit Photos

Ogle's final alleged instance of quid pro quo sexual harassment concerns Jones's demand that she send photos of her breasts. Ogle satisfies the first, second, third, and fifth elements of her claim for the same reasons applicable to her pay raise claim. That is, it remains true that Ogle is a member of a protected class, was potentially subjected to unwelcomed sexual harassment, could have been harassed based on her sex in the eyes of a jury, and has established respondeat superior liability. Only the fourth element warrants a separate examination.

Ogle claims that while on vacation, Jones messaged her and demanded she send a photo of her breasts. [Doc. 87-2 at 65–66]. Jones said if Ogle did not send a photo, she would have to return to work the next morning, even though she had already taken that day off as part of her vacation. [*Id.*]. At the trial of one of Jones's other alleged victims, Ogle attributed the following statement to Jones: "He said, 'If you don't send me a picture of your breast, you need to be back to work Tuesday morning or else you won't have a job.'" [Doc. 87-1 at 10]. Ogle complied with Jones's request and sent him a selfie of herself in a bathing suit. [Doc. 87-2 at 66].

Because Ogle submitted to Jones's demand and sent him a photo, the question, as to the fourth element, is whether Ogle was compelled to choose between submitting to the sexual demands and "forfeiting job benefits" or "continued employment." *Highlander*, 805 F.2d at 648. A jury could find that Ogle was forced to make that choice. At the very least, Ogle's testimony reflects that she felt compelled to choose between sending the photo of her breasts and forfeiting a job benefit—namely, giving up the additional vacation day she had already obtained. The record also suggests Ogle had to send the photo as a condition of her continued employment. Jones made this condition clear through his alleged statement expressing that Ogle would lose her job if she failed to comply. Ogle's account, if believed, would allow a jury to rule in her favor on the fourth element, which means this version of her quid pro quo claim may also proceed to trial.

## IV. CONCLUSION

Defendant Anderson County's Motion for Partial Summary Judgment [Doc. 72] is **GRANTED IN PART** and **DENIED IN PART**. The Court's rulings are summarized below:

- Counts Six and Seven, which allege retaliation in violation of the Equal Protection Clause and THRA, are **DISMISSED WITH PREJUDICE**.

- Ogle's quid pro quo sexual harassment claim premised on the request to sign a statement is **DISMISSED WITH PREJUDICE**. Her remaining quid pro quo claims, which pertain to the denial of pay raises and request to send explicit photos, may proceed to trial.

- Defendant Jones's Motion to Join Co-Defendant Anderson County's Motion for Partial Summary Judgment [Doc. 77] is **GRANTED**.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**