UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| AMY OGLE, | ) | |
|---|---|---|
| *Plaintiff*, | ) | |
| | ) | Case No. 3:20-cv-293 |
| v. | ) | |
| | ) | Judge Atchley |
| WILLIAM T. JONES, individually and in his official capacity, and ANDERSON COUNTY, TENNESSEE, | ) | Magistrate Judge McCook |
| | ) | |
| *Defendants.* | ) | |

## MEMORANDUM OPINION AND ORDER

This matter came before the Court for a jury trial on July 9, 2024. The jury returned a verdict for Plaintiff Amy Ogle, and three post-trial motions are now ripe for the Court's review. Defendant Anderson County, Tennessee filed a Motion for New Trial, Judgment Notwithstanding the Verdict, and to Alter or Amend Judgment [Doc. 159]. Defendant William T. Jones filed a Motion to Adopt Defendant Anderson County's Motion [Doc. 161] and a Motion for Remittitur [Doc. 164]. For the reasons explained below, the requested relief will be **DENIED**, except to the extent the judgment against Defendant Anderson County will be modified to account for the Tennessee Human Rights Act's cap on damages.

### I. FACTUAL BACKGROUND

Plaintiff Amy Ogle filed this lawsuit against Defendants Anderson County and William T. Jones on June 30, 2020. Plaintiff worked as a Deputy Clerk in the Anderson County Circuit Court Clerk's Office and alleged that during her employment, Circuit Court Clerk and elected official William T. Jones sexually harassed her. At trial, Plaintiff asserted claims for hostile work environment and quid pro quo sexual harassment against both Defendants.

The trial saw testimony from seven witnesses, six live and one by video deposition. Plaintiff's testimony proved the most consequential. She testified to Jones's repeated acts of sexual harassment. On one occasion, Plaintiff emerged from underneath her desk after adjusting wires, and she encountered Jones, who told her that the back of her head would look better while performing oral sex. [Doc. 156 at 69]. On other occasions, Jones would rub Plaintiff's legs, request oral sex, and show pornography to her. [*Id.* at 56, 67, 82, 84]. Jones assigned inappropriate names to the women in the clerk's office, including "daddy's prissy bitch" for Plaintiff. [*Id.* at 60].

Plaintiff also described how Jones tied his sexual demands to her job conditions. Jones told Plaintiff that until she "got out of her shyness," or gave in to his demands, she would no longer receive pay raises. [*Id.* at 74]. In addition, once while on vacation, Jones messaged Plaintiff and told her that if she did not send a photo of her breasts, she would be fired if she did not return to work the following morning. [*Id.* at 94]. Plaintiff complied with Jones's request and sent him a photo of herself in a bathing suit. [*Id.* at 95]. These incidents, among others, led Plaintiff to "shut down" whenever Jones entered the office. [*Id.* at 59].

Plaintiff worked at the clerk's office for approximately three years—specifically, from November 2016 to December 2019. [*Id.* at 101, 112]. From November 2017 to May 2018, however, Plaintiff went on medical leave. [*Id.* at 106, 108]. While on medical leave, Plaintiff met with HR Director Kim Whittaker in February 2018, and Whittaker asked Plaintiff whether Jones had harassed her. [*Id.* at 108–09]. Plaintiff denied the harassment allegations. [*Id.* at 109]. One month later, however, Plaintiff changed her story and told Whittaker that Jones had been sexually harassing her. [*Id.* at 129–30].

Plaintiff eventually returned from medical leave in May 2018. HR relocated Plaintiff to the Sheriff's Department in an effort to separate her from Jones. [*Id.* at 91, 110]. After working there

2

for a brief period, Plaintiff requested to return to the clerk's office. [*Id.* at 110–11]. When Plaintiff made this request, Jones had recently lost the primary election, and his soon-to-be successor Rex Lynch informed Plaintiff that she needed to return to the clerk's office if she wanted to keep her job. [*Id.* at 111]. Plaintiff left the clerk's office in 2019, and she has since worked at a law firm, PSI Probation, and the Union County Sheriff's Department. [*Id.* at 113–14].

Gail Harness, one of Plaintiff's coworkers, testified at trial and told similar stories of Jones's harassment. Harness described how Jones would enter the office and wrap his arms around her and Plaintiff. [*Id.* at 19]. The two confided in one another and learned that Jones was sending inappropriate messages over Snapchat to both of them. [*Id.* at 20]. Documentary evidence revealed that Plaintiff and Harness were not alone in their experiences with Jones. An anonymous complaint and Censure Resolution from the Anderson County Board of Commissioners, both admitted without objection from Defendants, noted numerous complaints against Jones for sexual harassment in the workplace. [Doc. 155 at 49–51, 67; Doc. 79-1]. Both documents indicate that numerous employees had complained of Jones's vulgar messages and unwanted touching.

The jury found in Plaintiff's favor on all but one of her claims and awarded damages totaling $5,950,000. [Docs. 150, 152]. The damages consisted of $3,000,000 in compensatory damages against Defendant Jones, $1,950,000 in compensatory damages against Defendant Anderson County, and, by separate verdict, $1,000,000 in punitive damages against Defendant Jones. [Doc. 152]. The Court entered a Judgment Order reflecting the jury's verdict on July 12, 2024. [*Id.*]. The parties' post-trial motions followed.

II. ANALYSIS

Defendant Anderson County seeks relief under both Federal Rule of Civil Procedure 50 and Federal Rule of Civil Procedure 59. [Doc. 159]. Specifically, Defendant Anderson County

requests that a judgment notwithstanding the verdict be entered in its favor, that a new trial be ordered, and/or that the damages award against it be reduced. Defendant Jones filed a timely and unopposed Motion to Adopt Defendant Anderson County's Motion, so the Court will consider Defendant Anderson County's arguments as if Defendant Jones had also raised them in his own post-trial motion. [Docs. 161, 180]. The Court will address each request for relief separately.

### A. Motion for Judgment as a Matter of Law

Defendants first request a judgment notwithstanding the verdict. "The term 'motion for judgment as a matter of law' under Federal Rule of Civil Procedure 50 amalgamates the old terms 'directed verdict' and 'verdict JNOV.'" *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 974 F.3d 767, 779 (6th Cir. 2020) (citing *K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175 (6th Cir. 1996)). Thus, the Court construes Defendants' motion for a judgment notwithstanding the verdict as one for judgment as a matter of law.

Rule 50 designates the process for seeking judgment as a matter of law. First, under Rule 50(a), one may file such a motion after "a party has been fully heard on an issue" during the trial. FED. R. CIV. P. 50(a). The motion must be made before the case is submitted to the jury. *Hanover Am. Ins. Co.*, 974 F.3d at 780 (citing FED. R. CIV. P. 50(a)(2)). If the trial court denies the motion and submits the case to the jury, Rule 50(b) allows for renewal of the motion after the jury renders its verdict. *Id.* A district court may grant a motion for judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1). When considering a motion for judgment as a matter of law, the district court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in

4

her favor. *Szekeres v. CSX Transp., Inc.*, 731 F.3d 592, 597 (6th Cir. 2013) (citing *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 531 (6th Cir. 2005)).

Both Defendants moved for judgment as a matter of law at the close of Plaintiff's proof. [Doc. 157 at 33–34]. The Court took the motions under advisement and submitted the case to the jury. [*Id.* at 37]. In renewing their motions, Defendants contend that Plaintiff failed to satisfy all elements of her claims for hostile work environment and quid pro quo sexual harassment. The Court will consider each claim in turn.

### 1. Hostile Work Environment

Plaintiff alleged that Defendants subjected her to a hostile work environment, both under 42 U.S.C. § 1983 and the Tennessee Human Rights Act ("THRA"). The Court instructed the jury on these claims in accordance with the Sixth Circuit's decision in *Harness v. Anderson County*, No. 21-5710, 2023 WL 4482371, at *6 (6th Cir. July 12, 2023). To prevail on her Section 1983 hostile work environment claim, Plaintiff had to show the following: (1) she was subjected to unwelcome harassment; (2) the harassment was based on her gender; and (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.[1] *Id.* Similarly, her THRA hostile work environment claim required proof of the following: (1) she was sexually harassed; (2) the sexual harassment created a hostile work environment or unreasonably interfered with her work performance; (3) the sexual harassment caused her physical or mental well-being to be seriously affected; and (4) Defendant Anderson County failed to take prompt and appropriate corrective action to eliminate the harassment.[2] *Id.*

---

[1] The fourth element of this claim requires Plaintiff to show that she was an employee of Anderson County, but because the parties stipulated to that fact, it was not included in the jury charge. *Harness*, 2023 WL 4482371, at *6.

[2] As the last element of this claim makes clear, the THRA applies only to Defendant Anderson County and not to Defendant Jones.

5

Defendants challenge the jury's hostile work environment findings in two primary ways. First, they suggest that Plaintiff did not experience unwelcome sexual harassment. Second, they contend that Plaintiff never saw the conditions of her employment altered based on severe or pervasive harassment. For the following reasons, neither argument proves meritorious, and Plaintiff offered sufficient evidence at trial from which the jury could have found in her favor.

Defendants' first argument—that Plaintiff did not experience unwelcome sexual harassment—is based on challenges to Plaintiff's credibility. Defendants emphasize that Plaintiff initially told HR Director Kim Whittaker that Defendant Jones was not harassing her, only to change her story during a second meeting and accuse him of harassment. [Doc. 160 at 6]. But Plaintiff testified that she originally refused to talk because she feared losing her job, and the jury was entitled to credit this explanation. [Doc. 156 at 108, 135]. The same is true of Plaintiff's decision to return to the clerk's office even after accusing Jones of harassment. The jury evidently deemed Plaintiff's explanation for returning to be satisfactory. She did not return because the work environment was devoid of harassment, but rather because Jones had lost the primary election, was due to be replaced, and his replacement indicated that Plaintiff needed to return to keep her job. [*Id.* at 111].

Defendant Jones raises additional arguments to suggest that Plaintiff did not experience unwelcome sexual harassment. He highlights that Plaintiff's behavior could suggest romantic interest on her part; she never asked him to stop sending messages, and she went to lunch with him multiple times per week. [Doc. 192 at 6–7]. The jury reached the opposite conclusion and deemed Jones's advances unwelcome. Ample evidence supported the jury's conclusion. Plaintiff testified that she would "shut down" when Jones entered the office, and she recounted how she was scared and cried uncontrollably after Jones told her that she would look better while performing oral sex.

6

[Doc. 156 at 59, 69–70]. Plaintiff's testimony on these subjects, among others, signaled that she resented rather than welcomed Jones's advances.

Defendants' second argument contends that Plaintiff did not experience harassment so severe or pervasive such that it altered the conditions of her employment. On this point, Defendants claim that Plaintiff never missed work or lost pay due to any harassment. [Doc. 160 at 13]. "Whether harassment is sufficiently severe or pervasive to create an abusive work environment is quintessentially a question of fact." *McNeal v. City of Blue Ash*, 117 F.4th 887, 904 (6th Cir. 2024) (citation and internal quotation marks omitted). Factors to consider in making this determination include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Plaintiff testified to numerous instances of Jones's harassment. She recounted how Jones would enter her office, sit next to her, and rub her leg. [Doc. 156 at 56]. Jones also told Plaintiff multiple times that he wanted oral sex, and he would show pornography to Plaintiff two to three times per week. [*Id.* at 67, 82, 84]. When Plaintiff once emerged from underneath her desk after adjusting certain wires, she encountered Jones, who told her that the back of her head would look better while performing oral sex. [*Id.* at 69]. These instances, among others Plaintiff described, demonstrate that Jones's harassment was not isolated, but recurring.

Plaintiff spoke to how Jones's harassment altered her employment conditions and created an abusive work environment. She explained that she would "shut down" when Jones entered the room and recalled Jones telling her that she would not receive any more pay raises based on her failure to comply with his sexual demands. [*Id.* at 59, 74]. Jones also relocated Plaintiff to the Oak

7

Ridge Division, which Jones referred to as "the graveyard," or where clerks are transferred just before they are fired. [*Id.* at 74]. This testimony provided the jury with more than enough evidence to conclude that Plaintiff experienced severe and pervasive harassment, which in turn altered the conditions of her employment and created an abusive working environment. The Court sees no reason to disturb the jury's findings that Plaintiff proved her hostile work environment claim under both Section 1983 and the THRA.

### 2. Quid Pro Quo Sexual Harassment

Plaintiff also asserted a claim for quid pro quo sexual harassment against Defendants. Any successful quid pro quo sexual harassment claim requires five showings. A plaintiff must prove that she (1) was part of a protected class; (2) was "subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors"; (3) was harassed based on her sex; (4) was expressly or impliedly required to submit to the unwelcome advances to receive job benefits or to avoid a tangible job detriment; and (5) was employed by an employer to which vicarious liability may be imputed. *Highlander v. K.F.C. Nat'l Mgmt. Co.*, 805 F.2d 644, 648 (6th Cir. 1986) (citations omitted). The concept of quid pro quo sexual harassment is relatively straightforward: it occurs "when an employee's submission to unwanted sexual advances becomes either a condition for the receipt of job benefits, or the means to avoid an adverse employment action." *Howington v. Quality Rest. Concepts, LLC*, 298 F. App'x 436, 440 (6th Cir. 2008) (citing *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461 (6th Cir. 2000)).

Defendants' challenge to the jury verdict concentrates on the fourth element—that Plaintiff must have been required to submit to Jones's unwelcome advances to receive job benefits or avoid a tangible job detriment. According to Defendants, Plaintiff failed to prove this element at trial. [Doc. 160 at 14]. They urge that she did not suffer any job detriment in the form of lost pay or

missed work and failed to connect any requests for sexual favors to a job detriment she suffered. [*Id.*]. For these reasons, Defendants seek judgment as a matter of law on Plaintiff's quid pro quo claim.

As with the hostile work environment claim, the Court will not alter the jury's finding on Plaintiff's claim for quid pro quo sexual harassment. The Sixth Circuit has "recognized that a 'loss of pay or benefits' can constitute a tangible job detriment." *Howington*, 298 F. App'x at 442 (quoting *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 454–55 (6th Cir. 2008)). *Howington* proves instructive on this point. There, the plaintiff worked at a restaurant and alleged a supervisor repeatedly propositioned her for sex. *Id.* at 437–38. The supervisor sent the plaintiff home early twice allegedly as a form of punishment. *Id.* at 438–39, 442. The plaintiff earned wages from tips as a bartender, which meant that she "lost compensation in the form of unearned tips" during the periods she was sent home. *Id.* at 442. This loss in compensation, according to the Sixth Circuit, could support a jury finding of a tangible job detriment. *Id.*

At trial, Plaintiff recounted how Defendant Jones told her that he would "get her out of her shyness," which Plaintiff interpreted as her being forced to comply with Jones's sexual demands. [Doc. 156 at 62–63]. Plaintiff also recalled Jones telling her that she would no longer receive pay raises based on her failure to comply with his sexual demands. [*Id.* at 74]. Similar to the unearned tips in *Howington* causing the plaintiff to lose compensation, the lack of a pay raise resulted in Plaintiff losing out on additional compensation she would have otherwise received upon "getting out of her shyness." Of course, tips are more regularly part of a bartender's compensation than raises are for an employee like Plaintiff, but raises were by no means unheard of for Plaintiff. She testified to receiving raises on multiple occasions before Jones told her that she should expect none in the future. [*Id.* at 57, 70]. The crucial point is this: the unearned tips and denial of a raise both

9

Case 3:20-cv-00293-CEA-JEM    Document 195    Filed 11/21/24    Page 9 of 18
PageID #: 1875

achieve similar results and deprive the employee of additional compensation she would have received upon complying with the supervisor's sexual demands. Plaintiff's testimony on this subject provided a sufficient basis for the jury to find in her favor.

The denial of pay raises did not provide the sole basis for Plaintiff's quid pro quo sexual harassment claim. Plaintiff testified to another incident that supported the jury finding in her favor. Specifically, while Plaintiff was on vacation, Jones messaged her and demanded she send a photo of her breasts. [*Id.* at 94]. Jones said that if Plaintiff did not send the requested photo, she would be fired if she did not return to work the next morning, even though she had already taken that day off as part of her vacation. [*Id.* at 94–95]. Plaintiff complied with Jones's demand and sent him a photo of herself in a bathing suit. [*Id.* at 95].

Plaintiff's testimony supports the jury's finding that she was compelled to choose between submitting to Jones's sexual demands and "forfeiting job benefits" or "continued employment." *Highlander*, 805 F.2d at 648. Her testimony reflected that she felt caught between sending a photo of her breasts and forfeiting a job benefit—namely, giving up the additional vacation day she had already obtained. Better yet, Jones's threat of termination suggested that Plaintiff's continued employment was contingent on her sending the requested photo. This testimony, when considered along with the denial of pay raises discussed above, provided sufficient evidence from which a reasonable jury could find in Plaintiff's favor on her claim for quid pro quo sexual harassment.

### B. Motion for New Trial

Defendants also seek a new trial pursuant to Federal Rule of Civil Procedure 59. Rule 59 allows a court to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). The Sixth Circuit deems a new trial appropriate in three circumstances. These circumstances include when (1) the jury's verdict

10

Case 3:20-cv-00293-CEA-JEM   Document 195   Filed 11/21/24   Page 10 of 18
PageID #: 1876

stands against the clear weight of the evidence; (2) the jury awards excessive damages; or (3) the trial proves unfair to the movant in some way. *Cummins v. BIC USA, Inc.*, 727 F.3d 506, 509 (6th Cir. 2013) (citing *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 414 (6th Cir. 2012)). As to the last ground, a new trial is warranted based on unfairness if the proceedings were "influenced by prejudice or bias." *Holmes v. City of Massillon*, 78 F.3d 1041, 1046 (6th Cir. 1996) (citations omitted).

Defendants request a new trial on grounds of unfair prejudice. They contend that certain other act evidence was improperly admitted and painted Defendant Jones as a serial harasser in the workplace. Defendant Anderson County moved in limine to exclude all other act evidence from the trial. [Doc. 92]. At the final pretrial conference, however, the Court alerted the parties to the Sixth Circuit's decision in *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321 (6th Cir. 2008). *Hawkins* held that in hostile work environment cases, "the factfinder may consider similar acts of harassment of which a plaintiff becomes aware during the course of his or her employment, even if the harassing acts were directed at others or occurred outside of the plaintiff's presence." *Id.* at 336. "The degree to which a past act of harassment is relevant to the determination of whether a plaintiff's work environment is hostile is a fact-specific inquiry that requires courts to determine the relevancy of past acts on a case-by-case basis." *Id.*

Defendants argue that for some of the other act evidence admitted at trial, Plaintiff failed to lay the proper foundation; that is, Plaintiff failed to establish that she learned of the other acts of harassment during her employment at the clerk's office. Defendants are indisputably correct. Plaintiff failed to lay the necessary foundation for some, but not all, of the other act evidence admitted at trial. To consider the effect the improperly admitted other act evidence had at trial,

11

however, the Court must examine the totality of the proceedings. *Kendel v. Local 17-A United Food and Com. Workers*, 512 F. App'x 472, 480 (6th Cir. 2013) (citations omitted).

Start with the other act evidence that was properly admitted. Gail Harness, one of Plaintiff's coworkers and another of Jones's alleged victims, testified that Jones once entered the room and wrapped his arms around her and Plaintiff from behind. [Doc. 156 at 19]. Harness further explained how she confided in Plaintiff, and they learned that they were both receiving inappropriate messages from Jones. [*Id.* at 20]. The two also discussed how Jones would approach them in a rolling chair and touch them. [*Id.* at 23–24]. The inappropriate touching and messaging Harness endured was properly admitted other act evidence. *Corbin v. Steak 'n Shake, Inc.*, 861 F. App'x 639, 644–45 (6th Cir. 2021) (holding that other act evidence pertaining to a coworker was properly admitted where the coworker testified that she confided in the plaintiff and they learned that they were both being harassed).[3]

Not all of the proffered other act evidence was properly admitted. When Plaintiff proffered this evidence, Defendants were obligated to object. Defendant Anderson County did move in limine to exclude all other act evidence, but the Court did not definitively rule on that motion at the final pretrial conference. Instead, the Court made clear that the admissibility of other act evidence would depend on Plaintiff's ability to lay the proper foundation at trial. Where, as here, the Court's ruling on a motion in limine "is in any way qualified or conditional," counsel must renew his objection at trial to preserve the issue for appeal. *Bronzino v. Dunn*, 558 F. App'x 613, 616 (6th Cir. 2014) (quoting *United States v. Poulsen*, 655 F.3d 492, 510 (6th Cir. 2011)). If counsel fails to renew his objection, plain error review applies. *Id.*

---

[3] Plaintiff testified to the various derogatory names Jones assigned to her and other women in the clerk's office during her employment. [Doc. 156 at 59–60]. That Plaintiff knew of these names demonstrates her awareness of the harassment others in the clerk's office were also experiencing.

12

Defendants did object to some of the other act evidence Plaintiff proffered. Specifically, Defendants objected to former HR Director Russell Bearden testifying to Nicole Lucas and Angela Brown's sexual harassment allegations against Jones. [Doc. 155 at 34–38]. Defendants also objected to HR Director Kim Whittaker's testimony regarding Nicole Lucas's complaint against Jones. [Doc. 156 at 140–41]. Those objections were overruled, and the other act evidence was admitted. Admission of this other act evidence was improper because, in contravention of *Hawkins*, Plaintiff never testified to gaining knowledge of Lucas or Brown's allegations during her employment. The question becomes whether the improper admission of this evidence was harmless error. On review of the record, the Court concludes it was.

Harmless error "is the criterion against which we test trial errors for unfair prejudice." *Gleason v. Noyes*, No. 96-3194, 1997 WL 539679, at *1 (6th Cir. Aug. 29, 1997) (citing FED. R. CIV. P. 61). When evidence is improperly admitted, the jury's verdict will not be vacated unless the evidence's admission "amounted to more than harmless error." *Kendel*, 512 F. App'x at 479 (quoting *Field v. Trigg Cnty. Hosp. Inc.*, 386 F.3d 729, 736 (6th Cir. 2004)). For the improper admission of evidence to be deemed harmless, the reviewing court must have a "fair assurance" that the trial's outcome was not "substantially swayed by the error." *Huang v. Ohio State Univ.*, 116 F.4th 541, 567 (6th Cir. 2024) (citations omitted). In applying the harmless error test, courts are "highly sensitive to the unique context of the particular case, including the one-sided or closely balanced nature of the evidence bearing upon the issue which the error arguably affected, and the centrality of that issue to the ultimate decision." *Kendel*, 512 F. App'x at 480 (quoting *Beck v. Haik*, 377 F.3d 624, 635 (6th Cir. 2004)).

The improper admission of certain other act evidence was harmless error. The Court reaches this conclusion in light of the particularly one-sided nature of the evidence presented at

13

trial. Plaintiff testified to numerous instances of Jones's harassment—the desk incident, the unwanted touching, the requests for oral sex, the displays of pornography, the demands for inappropriate photos, and more. Both Plaintiff and former HR Director Russell Bearden recalled how Jones told them that his status as an elected official meant that no one could punish him for his actions. [Doc. 155 at 46; Doc. 156 at 67]. Moreover, some of the other act evidence was properly admitted through Harness's testimony, which revealed that Plaintiff and Harness shared similar experiences with Jones. The combined effect of this evidence provides the Court with a fair assurance that the jury's verdict was not substantially swayed by any error.

This conclusion is buttressed by the fact that certain other act evidence—the precise kind Defendants characterize as prejudicial—was admitted without any objection on multiple occasions. First, Defendants did not object when Plaintiff tendered an anonymous complaint, which alleges that many employees received vulgar messages from Jones and experienced unwanted touching. [Doc. 155 at 49–51]. Second, Defendants failed to object to the admission of Harness's complaint, which describes how Jones would touch employees inappropriately and refer to them with derogatory names.[4] [*Id.* at 52–53]. Third, Defendants did not object to the admission of the Anderson County Board of Commissioners' Censure Resolution of Jones. [*Id.* at 67]. The Censure Resolution notes that seven sworn statements allege Jones made unwelcome sexual advances, sent vulgar text messages, touched employees without their consent, and referred to them with degrading nicknames. [Doc. 79-1]. These three documents contain numerous allegations of Jones's harassment made by individuals other than Plaintiff, yet Defendants failed to object to their admission.

---

[4] While testifying, Harness recounted Jones telling her that he would "prefer [her] on top" and acknowledged a time when Jones asked her to send a photo of her breasts. [Doc. 156 at 15, 21]. Defendants take issue with this testimony, but they failed to object at trial. [*Id.*; Doc. 192 at 3].

Where, as here, a party fails to raise timely objections at trial, the Court may review the admission of evidence for plain error. *Bldg. Serv. Loc. 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1397–98 (6th Cir. 1995) (citing *Helminski v. Ayerst Lab'ys, a Div. of Am. Home Prods. Corp.*, 766 F.2d 208, 211 (6th Cir. 1985)). Plain error is a "very high standard" and requires a showing that the error affected the complaining party's substantial rights. *Maday v. Pub. Librs. of Saginaw*, 480 F.3d 815, 820 (6th Cir. 2007); *Bronzino*, 558 F. App'x at 617. Ultimately, "the plain error exception to the contemporaneous objection rule is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *Id.* (citations and internal quotation marks omitted).

Admission of this other act evidence did not constitute plain error. Defendants failed to object to certain other act evidence on at least three separate occasions. They allowed the anonymous complaint, Harness's complaint, and the Censure Resolution to be admitted without objection or even requests for redactions. Considering their repeated failures to object, Defendants evidently did not perceive this other act evidence to present an issue which affected their substantial rights. *Grandview Raceway*, 46 F.3d at 1398 (finding no plain error where the defendants' counsel failed to object to an exhibit on numerous occasions, reasoning that the "repeated references to the 'objectionable evidence' indicate that the issue was not perceived as one which affected defendants' substantial rights"). Consequently, the Court concludes that admission of this other act evidence did not amount to plain error and affect Defendants' substantial rights.

In short, the Court denies Defendants' request for a new trial on grounds of unfair prejudice. Some other act evidence was properly admitted, and some was not. Nevertheless, Plaintiff's testimony provided overwhelming evidence of Jones's sexual harassment. And

15

Defendants failed to object to the admission of other act evidence on multiple occasions. The Court's review of the proceedings in their entirety reveals that neither harmless error review nor plain error review entitles Defendants to a new trial.

### C. Motion for Remittitur

In the alternative to their request for a new trial, Defendants seek remittitur of the jury's verdict. Remittitur is generally disfavored, and a district court should reduce the damages awarded only if they are (1) "beyond the range supportable by proof"; (2) "so excessive as to shock the conscience"; or (3) "the result of a mistake." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004) (quoting *Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 156 (6th Cir. 1996)). Critically, a district court "abuses its discretion in ordering either a remittitur or new trial when the amount of the verdict turns upon conflicting evidence and the credibility of witnesses." *Farber v. Massillon Bd. of Educ.*, 917 F.2d 1391, 1395 (6th Cir. 1990) (citations omitted).

Defendants argue that Plaintiff failed to present sufficient evidence to justify the jury's award of $4,950,000 in compensatory damages.[5] They emphasize Plaintiff's failure to present evidence of medical or psychological injuries, either through expert testimony or medical records. [Doc. 160 at 7]. Quite the opposite, Defendants point to Plaintiff's admission that she passed a psychological exam before beginning her current employment at the Union County Sheriff's Department. [*Id.* at 6]. Beyond her own story, Defendants claim that Plaintiff presented no proof of damages, thus rendering the jury's verdict excessive. [*Id.* at 11].

---

[5] The jury also awarded $1,000,000 in punitive damages against Defendant Jones. [Doc. 152]. The Court entered a Judgment Order reflecting this verdict on July 12, 2024, but Jones did not file his Motion for Remittitur until August 11, 2024. [Doc. 164]. Federal Rule of Civil Procedure 59 requires motions for a new trial and motions to amend the judgment to be filed within 28 days after entry of the judgment. Thus, Jones's Motion for Remittitur [Doc. 164] is untimely and must be denied on that basis. The Court will therefore not consider remittitur of the jury's punitive damages award.

The Court declines to remit the jury's verdict. Plaintiff's damages proof was not exactly expansive, but her testimony shed light on numerous instances of Jones's harassment in great detail. And Plaintiff's husband testified to the harassment's continuing effects: Plaintiff remains uncomfortable around male supervisors to this day, and she has panicked following encounters with Jones in public. [Doc. 157 at 23]. The type of harassment Plaintiff testified to enduring often results in mental and emotional damages that prove difficult to calculate. Indeed, the Sixth Circuit has explained "that quantifying pain and suffering is a nearly impossible exercise." *Bach v. First Union Nat'l Bank*, 149 F. App'x 354, 362 (citing *Bickel*, 96 F.3d at 156). The Court even instructed the jury that no precise standard exists to calculate damages for pain and suffering, embarrassment and humiliation, loss of enjoyment of life, and harm to reputation. The jury evidently deemed Plaintiff credible and awarded her damages to compensate for the harassment. On this record, the Court denies Defendants' request for remittitur.

### D. Inconsistent Verdict

Defendant Anderson County requests that the jury's verdict be vacated on grounds of its inconsistency. [Doc. 160 at 2; Doc. 188 at 4]. The jury found that Plaintiff proved her Section 1983 quid pro quo harassment claim against Anderson County but not her quid pro quo harassment claim under the THRA. [Doc. 150 at 2–3]. These contrary findings came even though the Court instructed the jury that the elements for quid pro quo harassment were the same under Section 1983 and the THRA. The Court appreciates Defendant Anderson County's argument, but it has been forfeited. Defendant Anderson County failed to object to the verdict before the Court discharged the jury, and the Sixth Circuit has held that "a party waives its objection to an inconsistent verdict under Civil Rule 49, when it does not object before the court discharges the jury." *Jones v. Kent Cnty.*, 115 F.4th 504, 512 (6th Cir. 2024) (quoting *Heil Co. v. Evanston Ins.*

17

*Co.*, 690 F.3d 722, 727 (6th Cir. 2012)). Defendant Anderson County does not attempt to excuse its failure to object, so the Court sees no reason to consider this forfeited argument. *Id.* at 513.

### E. THRA Reduction

The jury awarded Plaintiff $650,000 on her THRA hostile work environment claim against Defendant Anderson County [Doc. 152 at 2]. The Court noted in the Judgment Order that "pursuant to Tenn. Code Ann. § 4-21-313(a)(6), Plaintiff's damages on this claim are capped at $300,000." [*Id.* at 2 n.1]. In its timely filed Motion to Amend the Judgment, Defendant Anderson County requests that the damages awarded on this claim be reduced from $650,000 to $300,000. [Doc. 160 at 11]. Plaintiff does not oppose this request. [Doc. 187 at 2 n.1]. In accordance with the THRA's cap on damages, the Court will reduce the jury's award on the hostile work environment claim from $650,000 to $300,000.

### III. CONCLUSION

Upon consideration of the record, Defendant Anderson County's Motion for New Trial, Judgment Notwithstanding the Verdict, and to Alter or Amend Judgment [Doc. 159] is **DENIED**, except to the extent an Amended Judgment Order will be entered to account for the THRA's cap on damages. Moreover, Defendant Jones's Motion to Adopt Defendant Anderson County's Motion [Doc. 161] is **GRANTED**, and his Motion for Remittitur [Doc. 164] is **DENIED** as untimely.

SO ORDERED.

> */s/ Charles E. Atchley, Jr.*
> **CHARLES E. ATCHLEY, JR.**
> **UNITED STATES DISTRICT JUDGE**